IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SUSAN CHANG, as Next Friend of    §
ALISON CHANG, a Minor, et al.,    §
                                  §
            Plaintiffs,           §
                                  §    Civil Action No. 3:07-CV-1767-D
VS.                               §
                                  §
VIRGIN MOBILE USA, LLC, et al.,   §
                                  §
            Defendants.           §

MEMORANDUM OPINION
AND ORDER

Defendant's motion to dismiss presents questions concerning the court's constitutional power to exercise personal jurisdiction over an Australian defendant arising from its use in Australia of a photograph downloaded from a public photo-sharing website. Concluding that plaintiffs have failed to make the required prima facie showing of personal jurisdiction, the court grants defendant's motion and dismisses this action without prejudice.

I

Plaintiffs Susan Chang ("Chang"), as next friend of Alison Chang ("Alison"), a minor,[1] and Justin Ho-Wee Wong ("Wong") sued defendant Virgin Mobile Pty Ltd. ("Virgin Australia"), an Australian-based company, in Texas state court on claims for invasion of privacy, libel, breach of contract, and copyright

_____

[1]The parties have used Alison's name in publicly-available pleadings filed before and after the December 1, 2007 effective date of Fed. R. Civ. P. 5.2(a)(3), which prescribes the use of a minor's initials rather than her full name. The court will therefore do so as well.

infringement[2] based on Virgin Australia's use of an image of Alison ("the photograph") in its "Are You With Us or What" advertising campaign (the "Campaign").[3] The case was removed to this court based on diversity jurisdiction, and Virgin Australia now moves to dismiss for lack of personal jurisdiction and insufficient service of process.[4]

Virgin Australia is an Australian company with its principal place of business in Sydney, New South Wales, Australia. Virgin Australia provides a range of mobile phone products and services, including prepaid and postpaid mobile phones. Its geographical area of operation is limited to the area of domestic Australia

---

[2]Plaintiffs also originally sued Virgin Mobile USA, LLC ("Virgin USA"), alleging the same claims alleged against Virgin Australia, and Creative Commons Corporation, alleging negligence in the creation of the licenses that governed the photographs placed on Flickr. Plaintiffs later voluntarily dismissed the actions against these defendants, and only Virgin Australia remains as a defendant.

[3]As the court explains below, *see infra* § II(B), the court accepts as true the uncontroverted allegations of plaintiffs' first amended petition and resolves in their favor any factual conflicts posed by the parties' affidavits. "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

[4]Because the court grants Virgin Australia's motion to dismiss based on lack of personal jurisdiction, it need not address whether there was insufficient service of process.

covered by the Optus telecommunications network.[5]

In 2007 Virgin Australia launched the Campaign in select Australian cities, such as Sydney and Adelaide. The Campaign featured a collection of over 100 photographs downloaded at no cost to Virgin Australia from Yahoo!'s ("Yahoo's") public photo-sharing website, Flickr. Alison's photograph was taken by her church counselor, Wong, a resident of Fort Worth, Texas, who then published the photograph on Flickr under a Creative Commons Attribution 2.0 license agreement that provides for the most unrestricted use available to any worldwide user (including commercial use and no monetary payment).[6] Virgin Australia used

---

[5]Virgin USA and Virgin Australia are distinct legal entities that are separately organized and operated. They have no connections, either by business relationship or by parent company ownership.

[6]The Creative Commons Attribution 2.0 license agreement provides, in relevant part:

> Subject to the terms and conditions of this License, Licensor hereby grants You a worldwide, royalty-free, non-exclusive, perpetual (for the duration of the applicable copyright) license to exercise the rights in the Work as stated below:
> a. to reproduce the Work . . .
> c. to distribute copies . . . of, display publicly . . . the Work . . . .
> The above rights may be exercised in all media and formats whether now known or hereafter devised . . . .

D. App. 42-43.

the photograph in an advertisement encouraging viewers to "DUMP YOUR PEN FRIEND" and advertising "FREE VIRGIN TO VIRGIN TEXTING." The advertisement was placed on bus shelter ad shells in major metropolitan areas in Australia.    Virgin Australia never distributed the advertisement incorporating Alison's image in the United States, including Texas, and it never posted the photograph on its website or on any other website.

Several weeks after Wong uploaded the photograph onto Flickr, Alison received an email from one of her friends with a picture of her on a billboard affixed to a bus shelter in Adelaide, Australia. A member of the Flickr online blogger community then posted the picture of the billboard to the World Wide Web.    The advertisement eventually garnered the interest of news stations, legal commentators, and website bloggers.

Virgin Australia moves to dismiss, contending that it lacks minimum contacts with the state of Texas and that it was not properly served.    Plaintiffs respond that they have re-served Virgin Australia and that the court has personal jurisdiction because of Virgin Australia's purposeful contacts with Flickr's Texas servers, its contract with Wong, and the intrastate effect of its conduct.

II

A

The determination whether a federal district court has personal jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court's statutory and constitutional inquiries are identical. *See, e.g., Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000).

The Due Process Clause permits a court to exercise personal jurisdiction over a nonresident defendant if

> (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."  To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted).  Minimum contacts include either "contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert

general jurisdiction." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate when a nonresident corporation "has purposefully directed its activities at the forum state and the 'litigation results from alleged injuries that "arise out of or relate to" those activities.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "General jurisdiction, on the other hand, will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'" *Id.* (quoting *Helicopteros*, 466 U.S. at 415-16).

To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiffs' interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

B

Plaintiffs are not required to "establish personal jurisdiction by a preponderance of the evidence; prima facie evidence of personal jurisdiction is sufficient." *Kelly*, 213 F.3d

at 854 (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).  Where, as here, the court decides the motion to dismiss without holding an evidentiary hearing, plaintiffs need only present sufficient facts to make out a prima facie case supporting personal jurisdiction.  *Alpine View*, 205 F.3d at 215.  To decide whether a prima facie case exists, the court must accept as true plaintiffs' "uncontroverted allegations, and resolve in their favor all conflicts between the facts contained in the parties' affidavits and other documentation."  *Kelly*, 213 F.3d at 854 (quoting *Alpine View*, 205 F.3d at 215); *see Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212-13 (5th Cir. 1999) (holding that defendant's evidence disputing truth of plaintiff's jurisdictional proof could not overcome plaintiff's prima facie case because evidence must be construed in plaintiff's favor).  "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted."  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n. 16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).

III

Plaintiffs do not contend that the court has general jurisdiction over Virgin Australia.  They maintain instead that the sole determinative issue is whether specific jurisdiction extends to a nonresident defendant who uses a website owned by a United States company to contract with a Texas resident and obtain from a Texas server a picture of a Texas resident via a computer located in Australia.  Plaintiffs essentially argue that Virgin Australia is amenable to personal jurisdiction in Texas based on three contacts with the state: (1) Virgin Australia's accessing a Flickr server located in Texas; (2) Virgin Australia's contract with a Texas resident; and (3) the intrastate effects of Virgin Australia's use of Alison's photograph in the Campaign.

A

Plaintiffs maintain that Virgin Australia had contact with a Flickr server[7] located in Texas, and they argue that this constitutes sufficient minimum contact to satisfy due process. Assuming *arguendo* that contact with a computer server fortuitously located in the state of Texas can establish personal jurisdiction

---

[7]Virgin Australia disputes plaintiffs' agency argument, contending that the vendors who found Alison's photograph on Flickr and incorporated it into a final product that was pitched to Virgin Australia are independent contractors, not agents of Virgin Australia, and therefore their conduct and contacts with the state of Texas cannot be attributed to Virgin Australia.  Because the court holds that there is no personal jurisdiction even if the actions of Virgin Australia's vendors are attributed to Virgin Australia, it need not address plaintiffs' agency argument.

here, plaintiffs have failed to make a prima facie showing that the server in this case was in fact located in Texas. Plaintiffs have only shown (through an affidavit from Yahoo's Compliance Paralegal) that Flickr's parent company, Yahoo, maintains servers in Texas that are used to process, transmit, or store images for Flickr users. Plaintiffs have not made a prima facie showing that the Texas servers were actually or necessarily used to process, transmit, or store images for Flickr users at the time Virgin Australia acquired the photograph. Plaintiffs recognize that Yahoo maintains servers in California and Virginia, yet they have failed to show that these were not the servers used to process, transmit, or store images for Flickr at the time Virgin Australia acquired the photograph. Especially after having granted plaintiffs *three* extensions to conduct jurisdictional discovery,[8] the court is not required to credit plaintiffs' conclusory assertion that the photograph was stored on a server located in Texas.[9] *See Panda Brandywine Corp.*, 2000 WL 35615925, at *2. Consequently, because plaintiffs have not made a prima facie showing that Virgin Australia's alleged contact with the server storing Alison's

_____

[8]In particular, plaintiffs subpoenaed Yahoo for all records relating to the location of the Flickr server that stored the photograph at issue.

[9]Plaintiffs do not contend that they should be excused from making the prima facie showing that Virgin Australia actually or necessarily contacted a server located in Texas because such a showing would be impossible for them to make.

photograph actually represents a contact with the state of Texas, this contact is insufficient to establish personal jurisdiction. *Cf. TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841, 848 (Tex. App. 2006, no pet.) (holding that plaintiff showed that accessed website servers were located in forum state); *Internet Doorway, Inc. v. Parks*, 138 F.Supp.2d 773, 777 (S.D. Miss. 2001) (concluding there was no question that spam email allegedly sent by defendant was received, opened, and read by residents in forum state).

B

Alternatively, even if the court assumes that plaintiffs made the prima facie showing of contact with a Texas server, they cannot rely on the fortuitous location of Flickr's servers to establish personal jurisdiction over Virgin Australia. *See Ray v. Experian*, 2007 WL 4245459, at *3 (N.D. Tex. Nov. 30, 2007) (Buchmeyer, J.) (holding that defendant's "accessing or sending data . . . to or from a database which happens to be headquartered in Texas is not *purposeful* availment by [defendant] of the benefits and protections of Texas' laws"); *Laughlin v. Perot*, 1997 WL 135676, at *6-*7 (N.D. Tex. Mar. 12, 1997) (Buchmeyer, C.J.) (finding that foreign corporation's electronically accessing consumer report in Texas could not give rise to jurisdiction in Texas).

Citing *TravelJungle* and spam-email cases, plaintiffs contend that, by virtue of the fact that Virgin Australia (through its vendors) deliberately directed its activity toward Flickr.com

(i.e., by visiting the website and downloading the photograph from Flickr.com), Virgin Australia can be haled into any forum where Flickr.com's servers are located. The cases plaintiffs cite, however, are readily distinguishable, either because they arise in the context of spam-email[10] or because the harm alleged in the complaint was directed toward the plaintiff's server. *See TravelJungle*, 212 S.W.3d at 850 (defendant allegedly sent electronic spiders to plaintiff's website, accessing the site 2,972 times in one day and using valuable computer capacity); *Verizon Online Servs., Inc. v. Ralsky,* 203 F.Supp.2d 601, 604 (E.D. Va. 2002) (defendant allegedly bombarded plaintiff's servers with spam, overwhelming the servers and causing delays in processing legitimate emails); *D.C. Micro Dev., Inc. v. Lange*, 246 F.Supp.2d 705, 710 (W.D. Ky. 2003) (defendant allegedly hacked into a database of a Kentucky server, stole client information, and used

---

[10]*See Internet Doorway*, 138 F.Supp.2d at 777, 779 (holding that jurisdiction existed under tort prong of state long-arm statute because tort was complete when email was opened in Mississippi and that defendant's act of sending spam email to Mississippi resident constituted "minimum contacts"); *Marycle, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 833-34 (Md. Ct. Spec. App. 2006) (holding that jurisdiction existed wherever spammer's emails were received because it had purposefully sent its product into another jurisdiction for purposes of sale).

Plaintiffs also cite *State v. Heckel*, 93 P.3d 189, 193 (Wash. Ct. App. 2004) (affirming summary judgment against defendant for violating state law prohibiting transmission of deceptive and misleading commercial spam emails), which does not even address the issue of personal jurisdiction.

the information to send spam-emails).[11]    Therefore, even if
plaintiffs had made a prima facie showing that Virgin Australia
made contact with a Flickr server located in Texas, such contact
would be insufficient to establish minimum contacts.[12]

C

Assuming *arguendo* that Virgin Australia contracted with Wong
(a Texas resident) to use Alison's photograph under the terms of
the license agreement and then breached the contract,[13] this conduct
does not establish specific personal jurisdiction over Virgin
Australia. "[M]erely contracting with a resident of the forum state
does not establish minimum contacts." *Moncrief Oil Int'l Inc. v.
Oao Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing cases).
Furthermore, "a plaintiff's unilateral activities in Texas do not

---

[11]Although plaintiffs discuss *Internet Doorway,* see *supra* note
10, as a case in which personal jurisdiction was established by
defendant's contact with the plaintiff's server in the forum state
(even though the server was not damaged by the defendant), *Internet
Doorway* involves no discussion of a server.

[12]Plaintiffs also argue that a "but-for" connection between
Virgin Australia's contact with a Texas server and all of
plaintiffs' claims necessitates a finding of personal jurisdiction.
The case that plaintiffs cite to support this but-for analysis,
however, actually rejects it. *See Moki Mac Rivers Expeditions v.
Drugg*, 221 S.W.3d 569, 581 (Tex. 2007, no pet.) ("We agree with
those courts and commentators who view the but-for test as too
broad and judicially unmoored to satisfy due-process concerns.").
Moreover, as the Fifth Circuit has signaled a movement away from
such a broad test, *id.* at 581 & n.3 (citing cases), the court will
not apply the but-for analysis here.

[13]Virgin Australia disputes plaintiffs' assertion that it
entered into a contract with Wong and breached it.

constitute minimum contacts [in a breach of contract case] where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Id.* at 312 (citing *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026 (5th Cir. 1983)).

Here, the license agreement did not require Virgin Australia to perform any of its obligations in Texas; on the contrary, the license permitted Alison's photograph to be used anywhere in the world. *See supra* note 6. Furthermore, plaintiffs have failed to show that Virgin Australia performed any of its obligations in Texas. It used the photograph solely in Australia, the one place that, according to Virgin Australia's evidence, it is authorized to sell its products and services. Finally, because Virgin Australia only used the photograph in Australia, the contract that permits the use of the photograph is centered in Australia, not Texas.[14] *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding that performance of contract regarding oil and gas drilling venture in Oklahoma was centered in Oklahoma); *Moncrief,*

---

[14]According to the record, Virgin Australia's performance under the alleged contract took place only in Australia. Alison's photograph was downloaded from Flickr to a computer located in Australia. The finished advertisement incorporating Alison's image was presented to Virgin Australia in Australia, and Virgin Australia used the advertisement in the Campaign in Australia. Moreover, because Virgin Australia's use of the photograph was limited to Australia, Virgin Australia only invoked the license agreement in Australia. And if Virgin Australia in fact breached the agreement, as plaintiffs allege, by failing to credit Wong as the photographer, the breach occurred in Australia.

481 F.3d at 312-13 (concluding that contract to develop Russian gas field was centered in Russia). Consequently, the unilateral activity of Wong——i.e., taking the photograph and publishing it in Texas on Flickr under the Creative Commons Attribution 2.0 license agreement——does not satisfy the requirement of contact between Virgin Australia and the state of Texas. *See Hydrokinetics,* 700 F.2d at 1029. Because the only contact with Texas that remains is the mere act of contracting with Wong, this is insufficient to establish minimum contacts. *See Moncrief*, 481 F.3d at 312 ("[M]erely contracting with a resident of Texas is not enough to establish minimum contacts.").[15]

Virgin Australia's vendor searched through hundreds of millions of Flickr photographs publicly available on the Internet and fortuitously selected Alison's photograph. Neither the

---

[15]Plaintiffs cite *Stewart v. Hennesey*, 214 F.Supp.2d 1198, 1203 (D. Utah 2002), for the proposition that "[o]nce a defendant knowingly enters into a contract [with a plaintiff in the forum state] through a website, whether by email or through electronic commerce, that defendant has purposefully availed him or herself of the privileges of the forum state." The quoted statement, however, was made in the context of analyzing whether the defendant's website activities established minimum contacts with the forum state. Reasoning that "an interactive website can establish jurisdiction when a defendant clearly conducts business through its website," the *Stewart* court held that by freely choosing to enter into a contract with the plaintiff for a "substantial purchase" through its "exceptionally interactive" website, the defendant had purposefully availed itself of the forum state's jurisdiction. *Id.* at 1203-04. Virgin Australia's conduct in the present case, however, is unlike that in *Stewart* and distinguishes this case factually. There has been no showing that Virgin Australia used an interactive website like the one in *Stewart* to enter into a contract with Wong.

nationality or residence of the photographed individual nor the location where the photograph was taken are clear from the image itself, and even if Virgin Australia should have known, based on Wong's Flickr profile, that Wong was a Texas resident, Wong's Texas location was irrelevant to the contract. *See id.* at 313 (holding that plaintiff's Texas location was "irrelevant" and did not establish minimum contacts where there was "no indication that the location of [plaintiff's] performance mattered"); *Renoir v. Hantman's Assocs., Inc.*, 230 Fed. Appx. 357, 360 (5th Cir. 2007) (holding that plaintiffs' Texas location was "irrelevant" to contract requiring defendant to sell plaintiffs' art collection, which was primarily located in Florida, at an auction held in Maryland). The mere fortuity that a party to a contract happens to be a Texas resident, coupled with that party's unilateral performance in the forum state, is not enough to confer jurisdiction. *See Holt Oil*, 801 F.2d at 778 (holding that in a contract to drill for oil and gas in Oklahoma, it was a "mere fortuity" that defendant happened to be a resident of Texas); *Renoir*, 230 Fed. Appx. at 360 ("[Defendant's] only contact with Texas came about by the fortuity that [the] collection [it contracted to auction in Maryland] happened to be owned by the [plaintiffs] in Texas."). Thus the facts of plaintiffs' breach of

contract claim[16] will not support a finding of specific personal jurisdiction over Virgin Australia.

D

Plaintiffs invoke the effects test articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), contending that, with respect to plaintiffs' intentional tort claims,[17] personal jurisdiction is established by the intrastate effects of Virgin Australia's conduct.  "In *Calder,* the Supreme Court held that when an alleged tort-feasor's intentional actions are expressly aimed at the forum state, and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions." *Southmark Corp. v. Life Investors, Inc*., 851 F.2d 763, 772 (5th Cir. 1988) (citing *Calder*, 465 U.S. at 789-790).  This holds true even if the tortfeasor's conduct occurred in a state other than the forum state.  *See id.*

In *Noonan v. Winston Co.*, 135 F.3d 85 (1st Cir. 1998), the *Calder* effects test was applied to a substantially analogous case. Noonan, a Massachusetts resident, brought an action alleging

---

[16]The facts of plaintiffs' copyright infringement claim likewise do not support a finding of specific personal jurisdiction because that claim is based on the same facts as their breach of contract claim.  Plaintiffs allege that Virgin Australia infringed Wong's copyright by continuing to use Alison's photograph without Wong's consent, after breaching the terms of the license agreement.

[17]Plaintiffs allege intentional tort claims of invasion of privacy, libel, and copyright infringement.

- 16 -

misappropriation, defamation, invasion of privacy, and related claims against French advertising agency Lintas:Paris, French cigarette manufacturer RJR France, and others based on the unauthorized use of his photograph[18] in a cigarette advertising campaign in France.  The advertisement pictured Noonan in his Boston Police uniform on horseback at Faneuil Hall in Boston. Without the knowledge of Lintas:Paris, several hundred copies of various French magazines containing the advertisement were distributed to, and sold from, retail magazine outlets in the Boston area.  Noonan became aware of the advertisement when several of his acquaintances, some of whom had seen the advertisment in France and some of whom had seen it in Boston, told Noonan about it.  After some people denounced him for supporting the cigarette industry, Noonan filed suit.

Holding that the exercise of personal jurisdiction over Lintas:Paris and RJR France would offend due process, the First Circuit reasoned that while Noonan had satisfied the injurious-effects part of the *Calder* test, Lintas:Paris and RJR France had not acted with "sufficient intent to make them reasonably

---

[18]The offending photograph was taken without Noonan's permission by an employee of the English book packaging house Colour Library Books ("CLB").  The photograph remained in CLB's files until CLB published it in *An American Moment*.  Two years later, CLB sold the photograph to Lintas:Paris with no restrictions on its use and without advising Lintas:Paris that Noonan had not granted a release.  Linta:Paris then used the photograph in the advertising campaign for client RJ France.  *Noonan*, 135 F.3d 87.

anticipate being haled into court [in Massachusetts]." *Id.* at 90 (internal quotation marks omitted).

> Like [the plaintiff in *Calder*], [Noonan] felt a tortious effect in the forum state where [he] lived and worked. Moreover, the content of the picture——a Boston Police Officer in uniform, sitting on a saddle blanket decorated with the Boston Police insignia, in front of a distinctive Boston landmark——indicated where any injury would be felt.
>
> For the first part of *Calder*'s framework to be satisfied, however, the defendants must have acted toward the forum state with sufficient intent to make them "reasonably anticipate being haled into court there." In *Calder*, the court found that the defendants' intentional conduct was "*calculated* to cause injury to respondent in California." There is no analogous intentional behavior here . . . .
>
> The defendants did not direct their actions toward Massachusetts. That the advertisement contains French text and a French phone number suggests Lintas:Paris created it for a French audience. This interpretation is corroborated, without contradiction, by a Lintas:Paris representative who stated that "[t]he advertisement was aimed solely at the French consumer market." Furthermore, Lintas:Paris "was not aware that some copies of the magazines bearing the advertisement" would reach Massachusetts.

*Id.* at 90-91 (citations omitted; emphasis and brackets in original).

Here, as in *Noonan*, plaintiffs have satisfied the injurious-effects part of the *Calder* test but have failed to make a prima facie showing of intent. Although Alison felt a tortious effect in Texas after the advertisement incorporating her picture garnered

the interest of news stations, legal commentators, and website bloggers, Virgin Australia did not direct its actions toward Texas. Like the defendants in *Noonan*, who aimed their advertisement solely at the French consumer market and did not intentionally target Massachusetts, Virgin Australia aimed the Campaign solely at Australia and did not intentionally target Texas.

If anything, the lack of intentional behavior aimed at the forum state is even more pronounced here than in *Noonan*. The advertisement in *Noonan* was placed in publications with international circulations, and although the defendants in *Noonan* claimed ignorance of the distribution, 305 copies of various French magazines containing the advertisement were distributed to retailers in the Boston area. Here, by contrast, Alison's photograph was only used on billboards at bus stations in Australian cities, and Alison only learned about the use of her image in Virgin Australia's Campaign after a third party saw the billboard at a bus station in Adelaide, Australia, took a picture of it, and then posted it on the Internet. The nondescript content of Alison's photograph, moreover, unlike the picture in *Noonan*, did not clearly indicate where any injury would be felt.

Alison's Texas injury——i.e., her distress at seeing her image used in an allegedly disparaging way——is insufficient to support personal jurisdiction in the state of Texas over Virgin Australia. *See id.* at 92; *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002)

("[P]laintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder.*"); *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *3 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (holding that tortious effects felt in forum state were insufficient to establish personal jurisdiction where there is no evidence that defendant intended to target forum state). "To find otherwise would inappropriately credit random, isolated, or fortuitous contacts and negate the reason for the purposeful availment requirement." *Noonan*, 135 F.3d at 92.

E

Because none of the three contacts on which plaintiffs rely establishes sufficient minimum contacts between Virgin Australia and the state of Texas, the court cannot constitutionally exercise personal jurisdiction over Virgin Australia. "Because [the court] find[s] that the first due process condition of minimum contacts was not satisfied, [the court] need not address whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice." *S. Cooper, Inc. v. Specialloy, Inc.*, 245 F.3d 791, 2000 WL 1910176, at *4 (5th Cir. 2000) (unpublished table decision).

\*    \*    \*

The court grants Virgin Australia's December 20, 2007 motion to dismiss and dismisses this action without prejudice by judgment filed today.

**SO ORDERED.**

January 16, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE